Rapallo, J.
There can be no doubt that, if the facts were as alleged by the plaintiff in her complaint, she had a *231 good cause of action against the defendant. It appears in evidence that, on the 16th of April, 1872, the plaintiff, being in search of apartments for herself and her three children, .she applied to the defendant, who was the owner of a tenement house at No. 54 Bushwick avenue, Brooklyn, and he then exhibited to her two rooms on the third story of this house, which she hired. On the twentieth of April she cleaned out the rooms, and on the twenty-second moved in, with her children, and occupied them. During the first few days of May she was taken ill with the small-pox and afterward removed to the hospital. She now alleges that she contracted the disease in those rooms. That, prior to her hiring them, they had been occupied by a family, one of whose members, a child, had died there of. this disease. That the defendant had notice of this fact at the time he let the rooms to her, but had taken no measures to disinfect the rooms, and suppressed from her the fact that they were infected. The judge submitted the case to the jury, charging them, “ that if a landlord lets premises to a tenant, and they are infected, and he knows it, it is his duty to let the tenant know it.” The judge further charged that, unless the defendant knew, or had reasonable notice that the premises were infected, the plaintiff could not recover. The jury found in favor of the plaintiff on these issues, and awarded her $1,500 damages.
We think the instructions to the jury were correct, and that none of the exceptions taken1 to the rulings at the trial present any serious question unless it be the exception to the refusal to nonsuit the plaintiff on the ground of want of proof of the defendant’s knowledge of the unhealthy condition of the rooms at the time he let them. The proof on this point, it must be conceded, is, by no means, conclusive or satisfactory; but, looking at the whole evidence, we cannot say that it was insufficient to warrant the submission of the question to the jury.
It appears that on the 22d of January, 1872, the rooms in question were hired and taken possession of by an English family named Deyoe. One witness testified that Mr. Deyoe, *232 when he came there, had his face badly spotted with smallpox, showing that he had had it but was over it. That, on or about the twenty-fifth of January, one of Deyoe’s children, an infant, died in those rooms; that on the twenty-fifth a coroner’s inquest was held upon the body. The coroner was called as a witness by the defendant, and produced his book, in which was an entry: “ January twenty-fifth. John Deyoe, five months, No. 54 Bush wick avenue, small-pox.” The coroner testified that he had no recollection, independent of the book. But the entry was put in evidence without objection, and in fact by the defendant himself and both parties seem 'to have treated it as properly verified. The book contained a further entry of the inquest in the same house: “ May seventh Charles Keyse, two years old.” The coroner, and also the mother of the child, testified that the cause of this death was small-pox. The plaintiff testified that in August, after she had returned from the hospital, she told the defendant that she had got the small-pox in the room he had let her, and he replied that he did not believe that, but that he believed she got it from the Keyses when Keyse’s child died. Another witness, Mrs. Huber, testified that after the plaintiff had taken the disease she, the witness, told defendant that the plaintiff must have got the disease from the first floor (where the Keyses lived), and he said no, she must have got it from the room up stairs, referring to the room which the English family had occupied and which was afterward let to the plaintiff.
This evidence tended to establish that the rooms were, in fact, infected. It is true several witnesses testified that when the Deyoe child died it was given out that it died of croup; that they saw the body and it bore no traces of small-pox; but it was for the jury to weigh this conflicting evidence.
The evidence of the defendant’s knowledge depends mainly upon the testimony of Mrs. Huber. His declarations, before referred to, were all máde after the plaintiff’s illness, and do not show any knowledge at the time of letting the rooms to her. But Mrs. Huber testifies that after the Deyoe *233 child died the Deyoes fumigated the room and produced a very disagreeable smell; that witness complained of this at the time to the defendant, and then told him that the folks had the small-pox in the house, and he said they should let the smoke out in the yard and not through the house. She also testified that Mrs. Meiner, another tenant, who occupied rooms under Deyoe, called the defendant’s attention to the fact that the people up stairs were letting the water run through the ceiling, and asked him why he let the small-pox water run through.
This is some evidence of notice to the defendant, before the letting of the rooms to the plaintiff, that they were infected. The defendant, in his testimony, denied the knowledge and information imputed to him, and the conversations testified to by the plaintiff’s witnesses, and stated that the coroner told him the Deyoe child died of croup, hut these were matters for the jury.
On the whole we think that the evidence was sufficient to carry the ease to the jury, and that the judgment must.be affirmed with costs.
All concur.
Judgment affirmed.